UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEROME CISSON,

                                                    Plaintiff,

   vs.
                                                                  9:09-CV-260

DANIEL MIDDAUGH, Oneida County Sheriff;         (FJS/ATB)
and EDNA HOBBIE, Oneida County Jail Law
Librarian,

                                                    Defendants.
_____

## REPORT-RECOMMENDATION

This matter has been referred by Senior District Judge Frederick J. Scullin, Jr., for Report-Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).[1]  This civil rights action arises from plaintiff's incarceration in the Oneida County Jail (Oneida) in 2008.  (Am. Compl. ¶¶ 5–15).  The amended complaint alleges that Sheriff Middaugh and Law Librarian Hobbie conspired to deny plaintiff access to courts, in violation of the First and Fourteenth Amendments.[2]  (Am. Compl. ¶ 1).  Plaintiff seeks declaratory relief and significant monetary damages. (Compl. p. 4).[3]

---

[1] The case was originally referred to Magistrate Judge George H. Lowe, but was re-assigned to me on November 2, 2010.  (Dkt. No. 52).

[2] Plaintiff also cites the Privileges and Immunities Clause of Article IV of the U.S. Constitution, as well as 42 U.S.C. sections 1983 and 1985.  (Am. Compl. ¶ 1.)

[3] Plaintiff began numbering the paragraphs in his amended complaint, but did not continue to the end of the pleading.  When it is possible, the court will cite to paragraphs by number; otherwise, as in this instance, the court will cite to the appropriate page.

Presently before this court is defendants' motion for summary judgment (Defs.' Mot.), requesting dismissal of the entire complaint. (Dkt. No. 45). As part of defendants' motion, they filed a statement of material facts, which plaintiff did not dispute. (Dkt. No. 45-6). Plaintiff has responded in opposition to defendants' motion (Pl.'s Resp.). (Dkt. No. 47). Defendants filed a reply to plaintiff's opposition. (Dkt. No. 49). For the following reasons, this court recommends granting defendants' motion.

## DISCUSSION

### I. Facts

Plaintiff alleges that from February to November 2008, defendants conspired to deprive him of "adequate access" to the courts and law library at Oneida. (Am. Compl. ¶ 5). In February 2008, plaintiff alleges that he informed the defendants that he did not have an attorney, was proceeding pro se, and was "entitled to adequate access to the law library." (Am. Compl. ¶ 7). Plaintiff alleges that law librarian Hobbie's actions rendered plaintiff "unable to prepare and file meaningful legal documents" for his criminal trial, and Sheriff Middaugh "failed to adequately supervise his subordinate" Hobbie. (Am. Compl. ¶ 10–11).

Oneida has a grievance policy and procedure. (Dkt. No. 45-2 pp. 4–7).[4]

---

[4] Defendants submitted affidavits and exhibits with their motion for summary judgment. Multiple exhibits are titled "Exhibit A," because defendants named their exhibits according to the affidavit to which they refer, rather than naming them sequentially as exhibits to their motion for summary judgment. To avoid confusion, the court will refer to them by docket number. In addition, many of the affidavits and exhibits do not have page numbers, thus the court will refer to them by the page number assigned by the case management/electronic court files (CM/ECF) system.

Plaintiff submitted a grievance dated September 9, 2008, in compliance with the grievance procedure. (Dkt. No. 45-2 p. 13). The grievance form indicates that plaintiff later spoke with Sergeant Zurek and the "problem [was] resolved." (Dkt. No. 45-2 p. 13). There is a check mark next to the choice "I accept this resolution," and plaintiff signed the form on October 1, 2008. (Dkt. No. 45-2 p. 13).

During his time at Oneida, plaintiff made numerous law library requests and requests for notary service. (Dkt. No. 45-3 pp. 21–83). With the exception of three[5] Inmate Request Forms, all are signed by plaintiff, indicating that the requests were answered. (Defs.' Stmt. of Mat. Facts ¶ 4; *see* Dkt. No. 45-3 pp. 21–83). Defendant Middaugh alleges that he had no personal contact with plaintiff. (Defs.' Stmt. of Mat. Facts ¶ 5).

## II. **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56[6]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion. *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply

---

[5] The Inmate Request Forms at Dkt. No. 45-3 pp. 31, 33, and 78 are not signed.

[6] Rule 56 was extensively amended, effective December 1, 2010. As the Advisory Committee Notes indicate, "the standard for granting summary judgment remains unchanged." The revised rule explicitly adopts procedures relating to summary judgment motions "consistent with those already used in many courts."

show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56 (c)(1)(A). Where the nonmovant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the nonmovant's claims or (2) identifying those portions of the nonmovant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 323); Fed. R. Civ. P. 56 (c)(1). The second method requires the movant to identify evidentiary insufficiency, not merely to deny the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment." *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987) (citation omitted). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict

4

for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### III. Exhaustion of Administrative Remedies

Defendants argue that plaintiff's has failed to exhaust his administrative remedies regarding any claims that defendants denied plaintiff access to the courts. (Defs.' Mot. p. 3–4). Under the Prison Litigation Reform Act, ("PLRA"), inmates must exhaust all available administrative remedies before bringing a federal action. 42 U.S.C. § 1997e(a). Exhaustion is a requirement that applies to all actions about prison life, whether they involve general circumstances or particular episodes and regardless of the claim's subject matter. *See, e.g.*, *Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004).

In *Jones v. Bock*, the Supreme Court held that in order to properly exhaust administrative remedies, an inmate must complete the administrative review process in accordance with the applicable state rules. 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules as a prerequisite to bringing a suit in federal court. 548 U.S. at 90–103. However, the Court in *Jones* held that proper exhaustion does not necessarily include a requirement that an inmate name all the defendants, unless the state procedure required it. 549 U.S. at 218.

At Oneida County Correctional Facility, the grievance procedure is a tiered process, with inmates first filling out a "Complaint/Grievance Form" to be reviewed by the Grievance Coordinator. (Defs.' Ex. A p. 2). Inmates may appeal adverse decisions of the Grievance Coordinator to the facility's Chief Administrative Officer. (Defs.' Ex. A p. 2). Adverse decisions at the Chief Administrative Officer level may be appealed to the New York State Commission of Correction (NYSCOC). (Defs.' Ex. A p. 3). Inmates can also informally communicate problems to Housing Unit Officers, but if they are unable to resolve the issue, the inmate is then instructed to fill out the "Complaint/Grievance Form," which is first reviewed by a Tour Supervisor, and unresolved Complaint/Grievance Forms are forwarded to the Grievance Coordinator as part of the Formal Grievance Process. (Defs.' Ex. A p. 2).

When determining whether an inmate has fulfilled the exhaustion requirement, the Second Circuit utilizes a "three part inquiry." *See Brownell v. Krom*, 446 F.3d 305, 311–12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). This inquiry examines (1) whether administrative remedies were available; (2) whether defendants' own actions estops them from raising exhaustion as an affirmative defense; and (3) whether special circumstances excuse the inmate's failure to exhaust. *Id.*

As described above, Oneida has a grievance process, and plaintiff acknowledges its existence. (Pl.'s Resp. p. 4). Plaintiff's only formal grievance was resolved on October 1, 2008, as evidenced by his signature. (Doc. No. 45-2 p. 5). Because his grievance was resolved, there was no need for plaintiff to seek further

6

administrative review. Plaintiff, therefore, did not appeal the grievance to the next level in compliance with Oneida's grievance policy.

Plaintiff argues that he was "threaten[ed] and had no choice" but to sign off on the grievance. (Pl.'s Resp. p. 5). Plaintiff also claims that he was "threaten[ed] to be put in the box" if he submitted grievances. (Pl.'s Resp. p. 4). However, plaintiff then states that he somehow submitted fifteen complaints that were never resolved or returned. (Pl.'s Resp. p. 4). Plaintiff does not specify how or to whom he submitted these grievances. Plaintiff did not include copies of these grievances or proof of his compliance with applicable procedures, although he claims he kept "copies of everything." (Pl.'s Resp. p. 4). It does not appear that plaintiff was in fact, deterred from pursuing all grievances, given that he admittedly pursued numerous complaints or grievances, despite the alleged threats.

The second inquiry under *Hemphill* requires the court to determine if defendants took some affirmative action to prevent the plaintiff from using the grievance procedure, such as beating, denying grievance forms and writing implements, or threatening retaliation. *See Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2004) (citations omitted). Defendants do not respond to plaintiff's allegations of threats of retaliation for filing grievances. Although plaintiff's claims of threats appear suspect, resolving all inferences in the plaintiff's favor, this court cannot find at a matter of law that plaintiff was not threatened with retaliation for pursuing grievances. Accordingly, the court cannot grant summary judgment based on a failure to exhaust on the current record.

## IV. **Conspiracy**

The amended complaint alleges that defendants conspired to violate plaintiff's constitutional rights. (Am. Compl. ¶ 1). Construing the facts in the light most favorable to plaintiff, he has failed to advance anything more than conclusory allegations, which are inadequate to sustain any of his claims of conspiracy.

### A. Section 1983

In order to support a claim for conspiracy pursuant to section 1983, there must be "(1) an agreement . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir. 2002); *Cusamano v. Sobek,* 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity, as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action are insufficient. *See Iqbal v. Hasty,* 490 F.3d 143, 177 (2d Cir. 2007); *see also Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir. 1999). Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl,* 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. *Ciambriello,* 292 F.3d at 325.

Plaintiff claims that defendants Middaugh and Hobbie "entered into an unlawful agreement and conspiracy to deprive plaintiff adequate access to the courts and law

8

library." (Am. Comp. ¶ 5).  However, plaintiff fails to show specifically when, where, or how defendants agreed to execute this purported conspiracy.  No evidence has been proffered relating to agreements, or even communications, between the defendants.  Other than her employment at Oneida, plaintiff never alleges law librarian Hobbie had any specific contact with Sheriff Middaugh.  Rather, plaintiff merely points to actions by law librarian Hobbie that plaintiff alleges denied him access to the courts, but which support no inference of concerted conduct with Sheriff Middaugh.

**B.     Section 1985**

"Section 1985 prohibits conspiracies to interfere with civil rights."  *Davila v. Secure Pharmacy Plus,* 329 F. Supp. 2d 311, 316 (D. Conn. 2004).  To state a claim for relief under Section 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828–29 (1983); *see also Iqbal,* 490 F.3d at 176.  To demonstrate that a conspiracy existed, "the plaintiff must prove a mutual understanding or meeting of the minds to violate [his or] her civil rights."  *Salgado v. City of N.Y.,* No. 00-CV-3667, 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (citations omitted).  "In addition, the conspiracy must be motivated by some class-based animus."  *Iqbal,* 490 F.3d at 176.

As demonstrated above, plaintiff's allegations of conspiracy are wholly

9

conclusory and, therefore, insufficient to state a claim. *See X-Men Sec., Inc. v. Pataki,* 196 F.3d 56, 71 (2d Cir. 1999). Moreover, there is no evidence that any alleged conspiracy was motivated by racial- or class-based animus. Accordingly, defendants' motion for summary judgment dismissing plaintiff's claims of conspiracy should be granted.

### V.     Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*,

129 S. Ct. 1937 (U.S. 2009).

Plaintiff did not oppose defendants' statement of material facts or Sheriff Middaugh's affidavit, asserting that Sheriff Middaugh had no personal contact with plaintiff while he was housed at Oneida County Jail. (Defs. Stmt. of Mat. Facts ¶ 5, Middaugh Aff. ¶ 3). Additionally, as stated above, plaintiff's conspiracy claims are completely insufficient. Instead, plaintiff argues that Sheriff Middaugh "is legally responsible for his subordinates['] actions which come from a doctrine known as respondeat superior[,] which permits [a] supervisor to held liable whether or not he had actual knowledge." (Pl.'s Resp. pp. 1–2). As explained above, respondeat superior does not establish liability in a section 1983 case. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

Plaintiff also argues that he "complain[ed] to Daniel Middaugh and to the Inspector General on the same date." (Pl.'s Resp. p. 2). Plaintiff appears to reference a document notarized on September 5, 2008, and entitled "Formal Complaint" that is addressed to both Sheriff Middaugh and the New York State Inspector General. (Dkt. No. 45-2 p. 16). Defendants included plaintiff's mail log, which gives no indication that a letter was sent to Sheriff Middaugh *or* the Inspector General. (Dkt. No. 45-4 p. 18–24). Plaintiff did *receive* a letter from the Inspector General on September 7, 2008. (Dkt. No. 45-4 p. 15).

It is well-settled that the receipt of a letter, without more, cannot establish personal involvement. *See Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y.

2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.") In addition, plaintiff argues that he was unable to timely file suppression motions and meet the filing deadline for his motion to dismiss the indictment. (Am. Compl. ¶ 12). Plaintiff indicated on one of his Inmate Request Forms that his trial was August 4, 2008. (Dkt. No. 45-3 p. 42). The letter addressed to Sheriff Middaugh was dated more than a month after plaintiff's trial began, which would have been after any suppression motion or motion to dismiss would have been resolved. At the point Sheriff Middaugh would have received the letter, if he did ever receive it, he would have been unable to do anything to correct any problem plaintiff was having filing a suppression motion or motion to dismiss. Because Sheriff Middaugh was not in a position to remedy the wrong, even assuming he received plaintiff's letter, plaintiff has failed to establish personal involvement on the part of Sheriff Middaugh. Accordingly, summary judgment should be granted and plaintiff's claims against Sheriff Middaugh should be dismissed for lack of personal involvement.

## VI.     Access to the Courts

It is well-settled that inmates have a constitutional right to "meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 823 (1977). The Supreme Court held in *Bounds* that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal

papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828.  The Supreme Court later clarified that "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The *Lewis* court explained, "the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*

"Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995).  In addition, "to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008).

Here, plaintiff argues that he was unable to timely file suppression motions and meet the filing deadline for his motion to dismiss the indictment.  (Am. Compl. ¶ 12). Plaintiff does not clarify his allegations, and does not explain exactly how defendants' actions prevented him from filing motions, if he was unable to obtain extensions, how his motions were otherwise meritorious, or if he lost the motions by default.  Plaintiff gives some explanation through documents styled as complaints, but that were

apparently not filed as part of the formal grievance system at Oneida.  One document states:

> The library don't notirize [sic] my document[s] on time, motion[s] have to be sent out on a time limit, I can't mail my documents out.  The only way is to place it in property, but if it is not notirize [sic], then I can't send it out.  The law library knows this, so [the law librarian] don't [sic] call me out or come on time so I can send it out thr[ough] visit.

(Dkt. No. 45-5 p. 10).  Another document, titled "Complaints #2," states that "several complaints about the law library and my personal mail that I [placed] in my property for Candida Morton to pick up . . . were not complete when she arrive[d] to pick [them] up."  (Dkt. No. 45-5 p. 5). [Law Librarian] Hobbie takes my legal document[s] and lose[s] them on the elevator, misplace[s] them . . ."  (Dkt. No. 45-5 p. 5).

Plaintiff was apparently trying to send out legal documents by giving them to his visitors to mail, rather than by using the Oneida mail procedure.  In the response from Sergeant Zurek, plaintiff was reminded that sending out legal materials by giving them to visitors to mail was "not allowed," and that Oneida was "not responsible for [your legal work] if you do not follow [the Oneida mail] procedure."  (Dkt. No. 45-5 p. 4).  Plaintiff concludes that due to defendants' actions, he was unable to adequately defend himself at trial, where he was proceeding *pro se*, and was therefore convicted. (Pl.'s Resp. p. 7).

Defendant Hobbie is a Correctional Services Aid at Oneida, and plaintiff's facility complaints further illuminate his claim against her. (Dkt. No. 45-3 p. 1).  For example, in a typewritten document entitled "Formal Complaints," plaintiff states that "[Law Librarian Hobbie] alone can not supply the demands for legal documents that is

14

require[d] for the inmates here at this facility." (Dkt. 45-2 p. 18). As explained above, a delay in working on a legal action or in communicating with the courts is not a constitutional violation. *See Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Plaintiff's blanket allegation that he was unable to adequately defend himself in court is inadequate when considered in light of the evidence on the record. Defendant Hobbie affirms that she "complied with request slips." (Dkt. No. 45-3 p. 1). Plaintiff was trying to circumvent Oneida's mail system and was unhappy when defendant Hobbie was not performing duties as law librarian on plaintiff's time schedule.[7] Plaintiff also states that he told the judge presiding over his criminal court that he was having problems with access to the court. (Dkt. No. 47 p. 10). If plaintiff was able to communicate this to the trial judge, who would thereby be made aware of the reason for any delay, it is unclear how defendant Hobbie was responsible if the trial judge did not accept plaintiff's excuses.

No reasonable fact finder would credit plaintiff's claim that he was unable to complete motions on time, due to an alleged general denial of access to the courts, when it is clear from the record that he was receiving materials from the law library by submitting Inmate Request Forms[8] and he was sending and receiving mail. Plaintiff's

---

[7] Plaintiff was reminded by Sgt. Zurek, "Ms. Hobbie is not your legal secretary. . . . If you do not have your items in on time they will not get back to you in time." (Dkt. No. 45-5 p. 4).

[8] Plaintiff signed off on the following Inmate Request Forms, indicating they were completed: One in February 2008, six in March 2008, two in April 2008, two in May 2008, five in June 2008, three in July 2008, one in August 2008, four in September 2008, nine in October 2008, and three in November 2008. (*See* Dkt. No. 45-6 ¶ 4; Dkt. No. 45-3 pp. 21–62. Six other fulfilled requests do not specify the date when they were submitted or fulfilled. *Id.* Plaintiff also had numerous requests for notary service completed. (*See* Dkt. No. 45-6 pp. 63–83).

15

mail log indicates he received mail each month between February and November 2008 and sent out mail through the Oneida mail service each month between March and November 2008.  (Dkt. No. 45-4 pp. 4–24).[9]

Nothing in the record before this court indicates any malice on the part of defendant Hobbie.  Even were she performing her duties as law librarian at a unsatisfactory level, plaintiff has submitted nothing to demonstrate defendant Hobbie was deliberately delaying or denying any of plaintiff's requests.  Plaintiff has failed to establish an issue of fact material to his denial-of-access-to-courts claim as to defendant Hobbie.  Defendants' motion for summary judgment should be granted and plaintiff's  complaint should be dismissed in its entirety.

## VII.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity, which protects government officials when performing their discretionary functions when "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  In determining whether qualified immunity applies, the court may first consider whether "the facts

---

[9] *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account." (citation omitted).  *See also Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case").

alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201(2001), modified by *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 811 (2009) (holding that, "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory in all cases"). Defendants here did not violate a constitutional right, so the court need not address qualified immunity.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 45) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: February 2, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge